IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 3, 2024

**G'WAYNE WILLIAMS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Lauderdale County**
**No. 9984      A. Blake Neill, Judge[1]**

_____

**No. W2023-00511-CCA-R3-PC**
_____

The Petitioner, G'wayne Williams, appeals the Lauderdale County Circuit Court's denial of his post-conviction petition, seeking relief from his convictions for three counts of rape of a child, a Class A felony; three counts of rape, a Class B felony; three counts of statutory rape by an authority figure, a Class C felony; six counts of incest, a Class C felony; three counts of aggravated statutory rape, a Class D felony; and two counts of violating the sex offender registry, a Class E felony, and resulting effective sentence of sixty-four years in confinement. On appeal, the Petitioner contends that trial counsel was ineffective for failing to file a pretrial motion to sever the counts for violating the sex offender registry, which prejudiced the jury, and for failing to make contemporaneous objections and preserve objections to inadmissible evidence in his motion for new trial, which resulted in waiver on direct appeal. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR. J., delivered the opinion of the court, in which J. ROSS DYER and MATTHEW J. WILSON, JJ., joined.

Jeremy T. Armstrong (on appeal and at hearing), Dyersburg, Tennessee, for the appellant, G'wayne Williams.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Julie Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

---

[1] Judge Neill did not preside over the Petitioner's trial or sentencing hearings.

## FACTS

Between 2012 and early 2015, the Petitioner repeatedly raped his minor stepson, who was born in December 2001. *State v. Williams*, No. W2020-01608-CCA-R3-CD, 2021 WL 5630887, at *1 (Tenn. Crim. App. Dec. 1, 2021). At the time of the crimes, the Petitioner was a registered sex offender. *See State v. Williams*, No. W2018-00924-CCA-R3-CD, 2020 WL 211546, at *13 (Tenn. Crim. App. Jan. 14, 2020). In June 2015, the Lauderdale County Grand Jury indicted him for four counts of rape, four counts of aggravated statutory rape, four counts of statutory rape by an authority figure, four counts of sexual battery by an authority figure, forty-five counts of incest, forty-one counts of rape of a child, forty-one counts of aggravated sexual battery, and two counts of violating the requirements of the sex offender registry. *Id*. at *1. The trial court appointed counsel from the public defender's office, and counsel filed a motion pursuant to Tennessee Rule of Evidence 404(b) to prohibit the State from mentioning any prior bad acts until a hearing could be held. *Id*. On March 1, 2017, the Petitioner retained counsel who ultimately represented him at trial. *Id*. n.3. On September 5, 2017, the State filed a pretrial motion pursuant to Tennessee Rules of Evidence 902 and 803(6), requesting to admit the victim's entire hospital record into evidence. *Id*. Trial counsel filed a response, objecting to portions of the record's admissibility that contained hearsay statements made by the victim and his mother. *Id*. The trial record did not reflect the disposition of either the Petitioner's or the State's motion. *See id*.

At trial, multiple witnesses testified for the State, including the then fifteen-year-old victim, his mother, a sexual assault nurse examiner, a juvenile court investigator, and the Petitioner's sex offender registry coordinator. *Id*. at *2-15. The victim testified about incidents of sexual abuse that occurred in the family home and in the Petitioner's trailer after the Petitioner moved out of the family home. *See id*. at *7-10. The abuse included fellatio of the victim by the Petitioner, fellatio of the Petitioner by the victim, anal penetration of the victim by the Petitioner, and anal penetration of the Petitioner by the victim. *See id*. The sexual assault nurse examiner, who examined the victim in January 2017 within seventy-two hours of the last reported incident of penetration, testified that she found physical evidence of recent penetration of the victim's anus and "'repeated trauma over . . . a long period of time[.]'" *See id*. at *5-6. The Petitioner's sex offender registry coordinator testified that the Petitioner had prior convictions for sexually assaulting an eight-year-old girl in 1991 and a twelve-year-old girl in 1989 and that only his biological children were allowed to live or spend the night in his home. *See id*. at 13-14. Several witnesses testified for the Petitioner, including his nephew, sister, and brother. *See id*. at *15-16.

At the conclusion of the proof, the State dismissed some of the charges and made an election of offenses based on eleven separate incidents of abuse for the remaining

charges. *See id*. at *16 & n.10. The jury convicted the Petitioner of three counts of rape, three counts of aggravated statutory rape, three counts of statutory rape by an authority figure, three counts of sexual battery by an authority figure, eleven counts of incest, eight counts of rape of a child, eight counts of aggravated sexual battery, and two counts of violating the sex offender registry for a total of forty-one convictions. *See id*. at *16-17. After a sentencing hearing in which the trial court merged some of the convictions, the Petitioner received an effective sentence of sixty-four years for three counts of rape, eight counts of rape of a child, and two counts of violating the sex offender registry. *Id*. at 17-18.

On direct appeal of his convictions to this court, the Petitioner claimed, in pertinent part, that the evidence was insufficient to support the convictions; that the trial court erred by admitting evidence of his prior convictions and bad acts; that admission of the victim's medical record into evidence was improper because the record contained hearsay statements and was prepared for purposes of prosecution; and that the trial court erred by failing to sever the two counts for violating the sex offender registry, which prejudiced the jury. *Id*. at *1. Addressing the sufficiency of the evidence, this court concluded that the State failed to prove the victim's age in three incidents for which the jury had found the Petitioner guilty of rape of a child. *See id*. at *23-24. As a result, this court reversed and dismissed fifteen convictions related to those incidents. *Id*. at *24.

Regarding the issue of admitting the Petitioner's prior convictions and bad acts, this court found that although the Petitioner filed a pretrial motion to prohibit prior bad act evidence pursuant to Tennessee Rule of Evidence 404(b), he waived the issue on appeal because the appellate record did not indicate whether the trial court held a hearing on the motion, because trial counsel did not make contemporaneous objections to the prior bad act evidence, and because trial counsel did not raise the issue in the Petitioner's motion for new trial. *Id*. at *24. The Petitioner requested that this court review the issue for plain error, and this court concluded that the Petitioner was not entitled to relief because the record did not clearly establish what occurred in the trial court. *Id*. at *25.

At the Petitioner's request, this court also reviewed the issue of the victim's medical record for plain error because the Petitioner did not raise it in his motion for new trial. *Id*. This court noted that trial counsel objected to the introduction of the victim's medical record during the sexual assault nurse examiner's testimony based on hearsay statements in the medical record but that the trial court overruled the objection based on a "'hearsay exception.'" *Id*. This court then stated as follows:

> The [Petitioner's] issue with the medical record does not appear to be with the admission of the record itself, but rather the statements in [the victim's] medical history regarding the longstanding nature of his abuse.

Most notably, the addendum to the examination, which was not relevant to [the victim's] medical treatment—but arguably an appropriate part of the hospital's recordkeeping—stated that [the victim] had named other children the [Petitioner] may have been molesting. Although we will not speculate regarding the viability of such a motion, the [Petitioner] could have moved to redact these statements under Tennessee Rule of Evidence 404(b). As we have discussed above, no Rule 404(b) objection was made during the trial, and no hearing was held.

*Id.* This court again found no plain error, concluding that although the medical record contained the names of other possible victims, relief was not necessary to do substantial justice because the victim and his mother were available for cross-examination; trial counsel cross-examined each witness "at some length and brought out inconsistencies" in the victim's statements; and the investigator already had testified about investigating other potential victims, all of whom denied having been abused by the Petitioner. *Id.* at *25-26. This court then stated, "This inconsistency, which potentially benefitted the [Petitioner], was considered by the jury relative to [the victim's] credibility, and the [Petitioner] has not demonstrated how the outcome of the trial would have been different had the statements been redacted." *Id.* at *26.

Addressing the trial court's failure to sever the two counts for violating the sex offender registry, this court ruled that the Petitioner waived the issue because he did not file a severance motion before trial. *Id.* at *28. Finally, this court sua sponte found that the trial court improperly merged some of the Petitioner's convictions and pronounced the Petitioner's revised convictions as follows: three counts of rape, three counts of aggravated statutory rape, three counts of statutory rape by an authority figure, six counts of incest, three counts of rape of a child, and two counts of violating the sex offender registry for a total of twenty convictions. *Id.* at *29-31. This court remanded the case to the trial court for resentencing. *Id.*

On remand, the trial court resentenced the Petitioner for twelve of the convictions but concluded that it had lost jurisdiction to resentence him for the remaining convictions affirmed by this court. *Williams*, No. W2020-01608-CCA-R3-CD, 2021 WL 5630887, at *1. The resentencing did not change the Petitioner's total effective sentence of sixty-four years. *Id.* at *5. On appeal to this court, the Petitioner claimed that the trial court erred by finding it had lost jurisdiction and that his effective sentence was excessive. *Id.* at *6. This court affirmed the judgments of the trial court. *Id.* at *7.

The Petitioner filed a timely pro se petition for post-conviction relief, and appointed counsel filed an amended petition in which the Petitioner alleged that trial counsel was ineffective for: 1) failing to request a Rule 404(b) hearing on the Petitioner's pretrial

motion to exclude prior bad act evidence; 2) for repeatedly failing to object to prior bad act evidence during the trial; 3) for failing to review and suppress hearsay statements in the victim's medical record; and 4) for failing to file a pretrial motion to sever the sex offender registry charges. The post-conviction court held an evidentiary hearing on February 24, 2023.

During the hearing, trial counsel testified for the Petitioner that she had been practicing law since 1983 and had been practicing criminal law since 1995 or 1996. In 2000, she was elected to serve as a general sessions judge for the Millington City Court and began practicing criminal law, domestic law, and bankruptcy in Tipton County. Trial counsel estimated that since 2000, she had taken three or four criminal cases to trial per year.

Trial counsel testified that the Petitioner retained her on February 6, 2017, and that his case was her first case involving sexual offenses. Trial counsel said she was "pretty sure" she told the Petitioner that she had never handled a case involving sexual crimes. Trial counsel thought the Petitioner's case "would go pretty much the same way as any other criminal trial," and she knew from her experience in family law that children lied about sexual abuse. The defense's theory of the case was that the sexual acts alleged by the victim never occurred.

Trial counsel acknowledged that she was the third attorney to represent the Petitioner and that she and his two previous attorneys filed pretrial motions. However, trial counsel did not file a motion to sever the charges for violating the sex offender registry, explaining,

> The reason I didn't is because he was going to go on the stand and testify, and I figured if he testified and testified truthfully about that, and it's something terrible to testify the truth about, that the jury would believe the rest of his testimony.

Post-conviction counsel asked trial counsel if not severing charges for violating the sex offender registry would tell a jury that a defendant was a sex offender. Trial counsel responded, "Not necessarily, because people will enter what they believe to be a best interest plea, which might put them on the sex offender registry." She reiterated that "the sex offender registry admission was going to be an indication of [the Petitioner's] honesty" but acknowledged that not severing the charges allowed the jury to hear that he was not supposed to have non-biological children in his home. The Petitioner ended up not testifying at trial.

Trial counsel acknowledged that she objected to the sexual assault nurse examiner testifying as an expert and objected to the State's introducing the victim's medical record into evidence because the record contained hearsay statements made by the victim and his mother. Trial counsel did not object to a section of the medical record that contained hearsay statements about other victims because the trial court had overruled her prior objections. She acknowledged that she needed to object to preserve the issue on appeal and that she never requested a Rule 404(b) hearing or tried to exclude prior bad acts from evidence. Trial counsel filed a motion for new trial and an amended motion for new trial but failed to preserve the issues in the motions. She said she could not remember "specifics" about the Petitioner's trial because the trial occurred five years before the post-conviction evidentiary hearing. She did not review the trial transcript in preparation for her testimony.

On cross-examination, trial counsel testified that she told the Petitioner she had never worked on a case involving sexual offenses. She stated, "When he was trying to hire me to begin with, we met outside these doors. . . . [A]nd I told him . . . I had never done this kind of case before." She later said that she did not remember who hired her but that "[s]omebody caught me outside and wanted me to represent him." Despite trial counsel's lack of experience in sexual offense cases, the Petitioner decided to hire her. Trial counsel was "sure" that she met with the Petitioner multiple times and that she went over discovery with him. She did not hire a DNA expert because she did not think the Petitioner could afford one.

Trial counsel testified that the victim had a motive to lie about the abuse and that she thought the victim was using his knowledge about the Petitioner's being on the sex offender registry to create the allegations. During jury deliberations, the Petitioner told trial counsel that the victim had been in a relationship with an "openly gay young man." If the Petitioner had provided that information to trial counsel earlier, she could have used it to create reasonable doubt. The State made a plea offer while the Petitioner was being represented by one of his previous attorneys, but trial counsel did not remember the State's making an offer during her representation. She said that if the State had made an offer, she would have met with the Petitioner to discuss it. At that point, the State advised trial counsel that according to the State's trial notes, the prosecutor made an offer in exchange for an effective thirty-one-year sentence, that the Petitioner declined the offer, and that the prosecutor withdrew the offer on April 22, 2016. Trial counsel acknowledged that the Petitioner retained her in 2017, after the State had withdrawn the offer. Trial counsel said that at the time of the post-conviction evidentiary hearing, she still did not think the Petitioner abused the victim.

On redirect-examination, trial counsel acknowledged that she did not request funding to hire a DNA expert. She also acknowledged that the Petitioner may have been

in jail when she was retained; if so, he could not have been the person she spoke with outside the courtroom.

The Petitioner testified that he thought his brother hired trial counsel. The Petitioner's brother asked trial counsel about herself, and trial counsel told him that "she was on Supreme Court, and she had handled cases like this before. So that's why he hired her." The Petitioner was in jail when trial counsel was retained, and trial counsel met with him in jail four or five times before trial. They talked about the facts of the case and the motions the Petitioner wanted trial counsel to file. One of those motions was a "motion to limit" so that some "things" could not be mentioned at trial. Trial counsel did not convey any plea offers to the Petitioner. After trial, though, she "mentioned something about a 21, 22 deal . . . or something like that, but it kind of went like it slipped her mind." The Petitioner did not understand how trial counsel could have forgotten to tell him about the offer.

The Petitioner testified that he told trial counsel that the victim would make up "stories" and that the victim was in sexual relationships with other boys. One night, the Petitioner and the victim's mother "caught" the victim with a boy. The Petitioner took the victim's video games and "everything" away from him, which made him angry with the Petitioner. Trial counsel did not go over the preliminary hearing transcript or the victim's medical record with the Petitioner before trial and told the Petitioner that she did not have time to go over "some of the stuff." The Petitioner retained another attorney to appeal his convictions.

On cross-examination, the Petitioner acknowledged that he participated in his defense. The Petitioner retained trial counsel because his previous attorney did not have time to work on his case, and none of his attorneys ever told him about a plea offer before trial. The Petitioner said that he told trial counsel why the victim was angry with him but that "[i]t was like she didn't want to hear it, so I left it alone." The Petitioner also told trial counsel about possible defenses, but they were "shot down." The sexual assault nurse examiner testified about "things that were outside of her license," and trial counsel should have hired a DNA expert to dispute her testimony even though the State did not have DNA evidence. The Petitioner answered all of trial counsel's questions and told her all the facts she needed to know for his defense. The Petitioner did not testify at trial because trial counsel did not file a "motion to limit" his testimony. On redirect-examination, the Petitioner testified that he knew his criminal history "would come at me" if he testified at trial.

On March 21, 2023, the post-conviction court entered an order denying the petition for post-conviction relief. Relevant to this appeal, the court addressed (1) trial counsel's failure to object to all of the hearsay statements in the victim's medical record; (2) trial

counsel's failure to sever the sex offender registry charges; and (3) trial counsel's failure to request a Rule 404(b) hearing and object to prior bad act evidence at trial. The post-conviction court recalled trial counsel's testimony that she objected to the victim's medical record being introduced into evidence, that the trial court overruled her objection, and that she stopped objecting because she did not want the trial court to continue overruling her objections in front of the jury. The post-conviction court found that trial counsel made a strategic decision not to object and stated that the post-conviction court would not second-guess her decision. The post-conviction court also found that the Petitioner failed to demonstrate that the outcome of his trial would have been different if trial counsel had objected, noting that this court stated in its direct appeal opinion that the medical record potentially benefitted the Petitioner because the record contained inconsistencies that allowed trial counsel to impeach the victim and because the investigating officer testified that he investigated other incidents of abuse mentioned in the record but that the children denied being abused by the Petitioner.

As to trial counsel's failure to file a severance motion, the post-conviction court accredited trial counsel's testimony that she planned for the Petitioner to testify and be honest about his being on the sex offender registry, which would have gained credibility with the jury. The post-conviction court noted that the Petitioner never disputed trial counsel's strategy during his testimony. The post-conviction court concluded, "While this may not have been a strategy other lawyers would have employed, this [c]ourt is not allowed to judge trial counsel's strategic decisions from hindsight and find deficient performance simply because the Court does not think the strategy was a wise one." The post-conviction court concluded that the Petitioner failed to prove that trial counsel's performance was deficient.

Regarding the Petitioner's claim that trial counsel was ineffective for failing to request a Rule 404(b) hearing or object to prior bad act testimony, the post-conviction court noted that the Petitioner "failed to identify at the hearing the specific evidence of bad acts to which trial counsel failed to object." The post-conviction court stated that it was assuming the Petitioner was referring to his two counts of being on the sex offender registry and concluded, as it did in its discussion of trial counsel's failure to sever the offenses, that trial counsel made a strategic decision. Accordingly, the post-conviction court found that the Petitioner was not entitled to post-conviction relief.

## ANALYSIS

On appeal, the Petitioner contends that he was denied the effective assistance of counsel because trial counsel failed to file a motion to sever the sex offender registry charges, which resulted in prejudice to the jury. He also contends that trial counsel was ineffective because she failed to request a jury-out hearing on the admissibility of prior bad

act evidence pursuant to Tennessee Rule of Evidence 404(b); stopped objecting to improper hearsay evidence in the victim's medical record because the trial court had overruled her previous objections; and failed to raise either issue on direct appeal, which resulted in waiver of plenary review. The State argues that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. *Id*. at § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Id*. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Here, the post-conviction court found that trial counsel made strategic decisions not to sever the offenses and not to continue objecting to the admissibility of evidence. The post-conviction court concluded that it would not second-guess trial counsel's decisions, and likewise, "it is not our function to 'second guess' trial counsel's tactical and strategic choices pertaining to matters of defense unless these choices are made without knowledge of the relevant facts or the law applicable to the issue." *Vermilye v. State*, 754 S.W.2d 82, (Tenn. Crim. App. 1987).

We note that the Petitioner raised only broad allegations in his post-conviction petition that related to trial counsel's failure to object to improper hearsay and improper prior bad act evidence. He did not point to any specific examples of evidence to which trial counsel should have objected, and he does not cite to any specific examples on appeal or provide any analysis to show that certain hearsay or prior bad act evidence was inadmissible. In order to demonstrate prejudice, it was incumbent on the Petitioner to show that trial counsel's objections would have been sustained and that prior bad act evidence would have been excluded. *See Roberson v. State*, No. E2020-00643-CCA-R3-PC, 2021 WL 2373819, at *16 (Tenn. Crim. App. June 9, 2021) (citing *Goad*, 938 S.W.2d at 370).

Moreover, the Petitioner argued on direct appeal of his convictions that the trial court erred by allowing prejudicial hearsay statements contained in the victim's medical

- 10 -

record into evidence. *Williams*, No. W2018-00924-CCA-R3-CD, 2020 WL 211546, at *24-25. Addressing the issue for plain error as requested by the Petitioner, this court determined he was not entitled to relief because he failed to demonstrate prejudice. *Id.* at *26. Therefore, he also cannot demonstrate prejudice regarding the medical record on post-conviction. *See Owens v. State*, No. M2009-00558-CCA-R3-PC, 2010 WL 1462529 *6 (Tenn. Crim. App. 2010) (quoting *Douglas Marshall Mathis v. State*, No. M2006-02525-CCA-R3-PC, 2008 WL 1850800, at *10-11 (Tenn. Crim. App. 2008), and stating that ground supporting ineffective assistance claim reviewed for plain error on direct appeal was subject to "'essentially the same standard'" in post-conviction proceedings).

Finally, we note that this case involved more than the victim's word against that of the Petitioner. The State also presented physical evidence of the Petitioner's recent and past sexual abuse of the victim. Reviewing this court's first direct appeal opinion, perhaps the most damning evidence against the Petitioner was the testimony of the sexual assault nurse examiner who testified, in detail, about the recent and past injuries she observed to the victim's anus, injuries so extensive that they caused scar tissue to form and changed his anatomy. *See Williams*, No. W2018-00924-CCA-R3-CD, 2020 WL 211546, at *5-6. Accordingly, we conclude that even if trial counsel was deficient, the Petitioner has failed to show that the outcome of his trial would have been different. Thus, the post-conviction court properly denied his petition for post-conviction relief.

## CONCLUSION

Based upon review, we affirm the judgment of the post-conviction court.

_____
JOHN W. CAMPBELL, SR., JUDGE

- 11 -